479 F.2d 671
 6 Fair Empl.Prac.Cas. 16, 5 Empl. Prac. Dec. P 8661
UNITED STATES of America, Plaintiff,
v.
COTTON PLANT SCHOOL DISTRICT NO. 1, et al., Defendants.
Abraham Willie WOODARD, Appellant and Cross-Appellee,
v.
ENGLAND SCHOOL DISTRICT NO. 2, Appellee and Cross-Appellant.
 Nos. 72-1583, 72-1615.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 10, 1973.
Decided June 6, 1973.
 
 John M. Bilheimer, Little Rock, Ark., for Woodard.
 G. Ross Smith, Little Rock, Ark., for England School Dist.
 Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.
 LAY, Circuit Judge.
 
 
 1
 The district court entered judgment for the petitioner, Abraham Willie Woodard, in the sum of $1,055.10 representing the damages incurred by Woodard as a result of his discriminatory discharge as a school administrator by the England School District No. 2. Woodard appealed on the ground that the court erred in denying him reinstatement or, alternatively, future damages; the school district cross-appealed on the basis that petitioner had failed to prove by clear and convincing evidence that he was discriminated against when his contract was terminated.
 
 
 2
 We find the evidence sustains the district court's findings as to the discriminatory discharge; however, we hold that petitioner is entitled to additional equitable relief rather than just the award of one year's damages.
 
 
 3
 From 1962 to 1970, Woodard had served as principal for the all black Gartrell School. The district court found that during that time "[h]e not only performed the administrative responsibilities of the school, but did some teaching and each year evaluated the teachers under his supervision and made recommendations to the school superintendent and board as to their reemployment for the following year." In 1969 and 1970, negotiations with, and a subsequent suit by, the Department of Health, Education and Welfare led to the disestablishment of the previously dual school system in the England School District. Although Woodard was given a contract for continued employment for the school year 1970-1971, it was decided under the new plan of integration that he would be placed in charge of a newly developed vocational school program at the former all black Gartrell School. Under his new position he had two black and two white teachers under his supervision; previously he had supervised twenty-seven black teachers and two part-time white teachers. On May 27, 1971, Woodard was advised that his contract would not be renewed. The school district defended its action on the basis that Woodard had failed to sufficiently account for some special funds used at the Gartrell School in prior years.
 
 
 4
 The district court appropriately followed the standard set forth by this circuit in Moore v. Board of Education of Chidester School District No. 59, Ark., 448 F.2d 709, 711 (8 Cir. 1971), where we said:
 
 
 5
 "A school district must show by 'clear and convincing' proof that the dismissal of black teachers was not unlawfully discriminatory if the district has a long history of segregation, if there is a decrease in the number of black teachers, if the proportion of the black faculty to white faculty is significantly less than the proportion of black to white students, and if only black teachers are dismissed."The district judge balanced the school board's claim of misapplied funds against the "acknowledged" facts that Woodard had been an active leader in the civil rights movement and had been instrumental in seeking integration of the school district on behalf of the black community. The court then concluded "that except for the required integration of the England School System and the timely activity of Mr. Woodard, the somewhat insignificant and untimely question as to the accounting problem would have never developed." Moreover, the district court found that Woodard had not been given a proper hearing as required under Arkansas law. Ark.Stat. Ann. Sec. 80-1246 (1971).
 
 
 6
 We find the evidence clearly supports the district court's findings and, therefore, find against the school district as cross-appellant.
 
 
 7
 The appeal by the petitioner relates to the relief granted. The district court awarded damages for one year based on the difference of Woodard's salary of $8,123.10 with the England School District and his salary of $7,900 with the Wabbaseka School District where he was able to obtain employment for the 1971-1972 school year. This amounted to $223.10. The court likewise found that plaintiff incurred travel expenses in the sum of $832.00 for the year. Thus the total judgment was entered for $1,055.10 plus attorney fees. The district court stated without discussion:
 
 
 8
 "Since he is employed with another school district, the Court does not conclude that it would be in the best interest to require the England School District to reinstate the petitioner in its system."
 
 
 9
 On appeal it is urged that plaintiff is entitled to reinstatement or, alternatively, future damages for school years subsequent to the 1971-1972 year. We deem it significant that the district court found:
 
 
 10
 "It is established that at the time of the required integration of the England School System there were three principals, two white principals for the formerly all-white school and the formerly all-white elementary school and one black principal for the formerly all-black Gartrell School. It is further established that the petitioner, Woodard, had equal certificate record of a master's degree with the other two principals and a much longer tenure as principal employed with the school district. With the integration of the schools one principalship was to be eliminated. Under the rule of this and other circuits in numerous decisions Petitioner Woodard could very well claim precedent over the two white principals where no objective discriminatory standards in the employment, assignment and dismissal of teachers had been established by the school district."
 
 
 11
 The evidence amply supports this finding.
 
 
 12
 Where a teacher discharge results from integration of a previously existing dual school district, there are oftentimes practical considerations arising where positions are merged and eliminated. In this instance, although Woodard was given a new position during the 1970-1971 school year, the school district argues that his position as vocational director has been eliminated and that there are no comparable positions available. The rule uniformly followed in this circuit, as established in Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770 (8 Cir. 1966), is that a teacher who is wrongfully discharged is entitled to be restored, as equitably as possible, to the status quo, that is, to his or her position and equivalent salary status enjoyed prior to the discriminatory discharge.[1] See Jackson v. Wheatley School District No. 28 of St. Francis County, Ark., 464 F.2d 411 (8 Cir. 1972); Cooley v. Board of Education of the Forrest City School Dist., 453 F.2d 282 (8 Cir. 1972); Moore v. Board of Education of the Chidester School Dist. No. 59, Ark., 448 F.2d 709 (8 Cir. 1971); Franklin v. County School Board of Giles County, 360 F.2d 325 (4 Cir. 1966); see generally Fisher v. Snyder, 476 F.2d 375 (8 Cir. 1973); Gieringer v. Center School No. 58, 477 F.2d 1164 (8 Cir. 1973). Thus, when vacancies occur a school employee who has been wrongfully terminated becomes entitled to the first opportunity to be reemployed, and the damages shall run until the effective date reemployment is offered. Where administrative or teaching positions are displaced because of school mergers or the revamping of curriculum or programs, we think it still encumbent on a school board to offer the first equivalent vacancy (administrative or otherwise) for which the discharged employee is qualified.
 
 
 
 * * *
 Judgment affirmed in part; the case is remanded for reconsideration of damages and other equitable relief in accord with this opinion.
 
 
 *
 The Honorable Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 In Smith, supra 365 F.2d at 784, the limits of relief and the procedure to be followed in implementing that relief are described in more detail:
 "[S]ince the dismissed teachers have been denied the comparative evaluation which was due them and nondiscriminatory consideration for vacancies filled since their dismissals, they, except for plaintiff Smith, are now entitled, if they so desire, to some preference in the filling of vacancies in the secondary school faculties which exist at the time of this decision or which arise in the future. Cf. Franklin v. County School Bd., [360 F.2d 325] supra. This is to be accomplished along the following lines: (1) The Board shall forthwith ascertain, with respect to each member of the former Sullivan faculty, other than Smith, whether that member remains interested in employment with the Morrilton district and, if so, the subjects which he is qualified to teach as measured by standards currently and legally applied by the Board. (2) A teacher who manifests such interest shall then be offered the first position for which he is so qualified in which a vacancy now exists or hereafter occurs. (3) This preference, however, shall extend only to the first such vacancy so offered to that teacher; irrespective of his acceptance or refusal of the first offered, he shall not be entitled to preference with respect to any subsequent vacancy.
 "The Court also will be confronted with the question of damages. Each of the former Sullivan teachers except Smith shall be entitled and shall be afforded the opportunity to establish, if he can, that he was damaged by his dismissal and the amount of such damage. The period for which damage may be shown is the period between the completion of the teacher's service at Sullivan and the filing date of this opinion, except that with respect to any teacher who, pursuant hereto, manifests a desire to obtain reemployment in the Morrilton schools, the period will also include the time between the date of this opinion and the effective date of reemployment offered him. Of course, the normal rules of mitigation shall apply to these damage determinations."