Carol **CANTRELL**, Plaintiff,

v.

Nolan L. **VICKERS** et al., Defendants.

No. EC 79–97–OS–P.

United States District Court, N. D. Mississippi, E. D.

Aug. 7, 1980.

Paul S. Minor, Biloxi, Miss., for plaintiff.

Dolton McAlpin, James M. Ward, Starkville, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The action sub judice came on for trial before the court sitting without a jury on April 21, 1980, at the United States Courthouse in Oxford, Mississippi. After a three-day evidentiary hearing, the court held the action under advisement and requested posttrial memoranda from the parties. The matter is now ripe for decision.

This Memorandum of Decision contains the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

I. *The Parties.*

A. *Plaintiff.*

Plaintiff, Carol Cantrell ("Mrs. Cantrell"), is an adult resident citizen of Starkville, Oktibbeha County, Mississippi. At the time of the commencement of this action, Mrs. Cantrell was employed for the 1978–79 school year as a third grade teacher at the Emerson Elementary School ("Emerson") of the Starkville Municipal Separate School District. Mrs. Cantrell was in her tenth year of service to the school district.

B. *Defendants.*

The defendants are:

1. Starkville Municipal Separate School District ("school district");

2. Dr. Nolan L. Vickers, individually and as Superintendent of the school district ("Dr. Vickers"); and

3. The trustees of the school district, each of whom is sued individually and in his or her official capacity as a member of the board of trustees of the school district, namely:
   a. Wilson Ashford
   b. Eugene Keller
   c. Ann Andrews
   d. Mary Bell, and
   e. Joe Thomas Mosley.

II. *Jurisdiction.*

The court has jurisdiction of the parties, as well as the subject matter by virtue of 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3) & (4).

III. *The Evidence.*

Mrs. Cantrell and another third grade teacher, Mrs. Betty Bardwell ("Mrs. Bardwell"), taught as a unit in a two-room classroom, approximately 52 children. The student body was made up of three groups (1) accelerated (above grade level); (2) average (grade level) and (3) below average (below grade level). Approximately 50 per cent of the student body were within the accelerated group. The area of complaint in Mrs. Cantrell's, as well as Mrs. Bardwell's teaching relationship with parents and children, arose from the accelerated group of students.[1]

Mrs. Cantrell's principal at Emerson, Walter B. Williams ("Mr. Williams"), evaluated her performance as a teacher during the 1978–79 school year on two occasions, once on December 11, 1978, and again on February 2, 1979. On each occasion, he found her performance to be "satisfactory", the highest rating on the rating scale. Mrs. Cantrell's performance prior to that time, had at all times been satisfactory and she was regarded as an excellent teacher.

---

1. The complaints from parents and children forming the background for the controversy here involved, were made against the teaching team. Mrs. Bardwell's controversy with school officials was settled amicably and is not involved in the action sub judice.

Mr. Williams recommended to his superintendent, Dr. Vickers, that Mrs. Cantrell be reelected to her position for the 1979–80 school year. Dr. Vickers initially concurred in the recommendation.

At the March 15, 1979, meeting of the board of trustees, Dr. Vickers recommended teachers to be employed by the school district for the 1979–80 school year. He recommended for reemployment all teachers then on the school faculty, who were applicants for reemployment, except Mrs. Cantrell and Mrs. Bardwell.

In October 1978, the parents of one of the children in the Cantrell-Bardwell teaching unit, complained to school authorities about the means being used by Mrs. Cantrell and Mrs. Bardwell to compel students to complete academic assignments. They requested a transfer for their child. Dr. Vickers, Mr. Hailey, the Assistant Superintendent, and Mr. Williams, the Principal, talked with Mrs. Cantrell and Mrs. Bardwell and with the parents of the child about the matter.

Again, on or about January 9, 1979, a parent called the superintendent's office and requested a transfer for their child to another third grade section. Dr. Vickers, Mr. Williams, and Mr. Hailey, discussed the request with Mrs. Cantrell and Mrs. Bardwell.

The matters which were discussed at the October 1978, and January 1979, meetings were evidently solved to the satisfaction of the school officials, since, on December 11, 1978 and February 2, 1979, Mrs. Cantrell's principal gave her the highest available rating for a classroom teacher; also, Mr. Williams recommended that her contract should be renewed for the 1979–80 school year, and Dr. Vickers, the Superintendent initially joined in the recommendation.

At the March 1979 meeting of the board of trustees, held on March 6, 1979, a group of concerned parents appeared before the board to voice complaints against the methods used by the Cantrell-Bardwell team to lead their students in the attainment of superior academic achievement.

The board held an executive session to hear the complaints. On behalf of some of those present, and others who were not present, an attorney representing the complaining parties, presented a four-page single-spaced typewritten letter outlining the grievances of his clients and requests for board action. The minutes of the board for this meeting reflect that a number of the members of the concerned citizens group were present at the executive session, and a number of letters and petitions were presented. The board received the complaints, but deferred action until its March 15, 1979, meeting.

The board of trustees convened in Executive Session at a recess meeting on March 15, 1979, to receive recommendations for personnel to be elected by the school district for the forthcoming year, 1979–80. All personnel recommended were extended contracts. Mrs. Cantrell and Mrs. Bardwell were not on the list recommended by the school superintendent, Dr. Vickers.

At that time, Dr. Vickers asked for and received permission of the board to interview all parents who had filed complaints against Mrs. Cantrell. There were ten of these and the complaints were in writing.

At the March 19, 1979, meeting of the board, Dr. Vickers recommended the reemployment of Mrs. Cantrell and the board acted favorably on his recommendation. The minutes of the meeting are silent on the subject, but it has been shown in the evidence presented, that the approval of the contract for Mrs. Cantrell was conditioned upon Mrs. Cantrell entering into a plan of improvement to be drawn by the superintendent.

The minutes, in pertinent part, state "Upon motion of Mr. Joe Thomas Mosely, seconded by Mr. Eugene Keller, the board voted unanimously to accept the Superintendent's recommendation of Mrs. Betty Bardwell and Mrs. Carol Cantrell for re-employment for the 1979–80 school year."

The following day, March 20, 1978, the board's attorney prepared a "Memorandum", which was signed by all members of the board. The memorandum not only rep-

rimanded Dr. Vickers for his handling of the Cantrell-Bardwell matter, but also, directed that he take certain steps which among others were (1) reprimand in writing the subject teachers, Mrs. Cantrell and Mrs. Bardwell; (2) reassign the teachers for the 1979–80 school year; and (3) develop a plan of improvement for the teachers and present such plan or plans to the board of trustees for consideration and approval at the earliest meeting of the board.

Dr. Vickers prepared a plan for each of the teachers and presented the plans to the board for approval at a noon recess meeting of the board, held the next day, March 21, 1978.

While the minutes of the noon recess meeting do not reflect an approval of the plans, neither do they reflect disapproval. The minutes merely stated that the plans were presented in the nature of a report by the District Administration. The court finds that the plans were drawn pursuant to the board's memorandum of March 20, 1978, directed to Dr. Vickers, and were in fact, approved by the board as meeting the conditions required by the board of the teachers for continued employment by the school district.

On the day of the approval of the plan for improvement by the board of trustees, Dr. Vickers mailed the plan to Mrs. Cantrell for her signature, with a cover letter advising that the plan must be implemented immediately. Dr. Vickers also reprimanded Mrs. Cantrell for her conduct as a teacher, which he stated, in his opinion, had been detrimental to some students in her class. Dr. Vickers placed Mrs. Cantrell on administrative probation for a period beginning March 22, 1979, and unless extended, ending May 23, 1980.

In his cover letter, Dr. Vickers informed Mrs. Cantrell of the March 6, 1979, meeting of the board of trustees with the group of concerned parents and their attorney, at which meeting the board was presented with a list of concerns regarding various aspects of the classroom operation of Mrs. Cantrell. Dr. Vickers stated that he had investigated the complaints and from the information received by him from the concerned parents interviewed, he had drawn a plan of improvement, which outlines the areas of concern and sets forth actions to be taken to remediate the problem areas.

On March 22, 1979, Mrs. Cantrell and her husband met with Dr. Vickers, Mr. Hailey, and Mr. Williams, at which time they discussed the areas of concern related to Mrs. Cantrell's performance as a classroom teacher. At this conference, the plan of improvement was presented to Mrs. Cantrell for review. Dr. Vickers requested that she agree to implement the plan and evidence her agreement by signing the plan. Mrs. Cantrell refused to sign the plan, and requested until March 26, 1979, to give her final decision.

On March 23, 1979, Mrs. Cantrell wrote Dr. Vickers, that she could not sign the plan, because she was innocent of any wrongdoing in the performance of her duties as a teacher, and was completely unaware of any basis justifying the imposition of the plan. Mrs. Cantrell also contended that she had not received written notice of the charges and had not been granted a hearing. Mrs. Cantrell reminded Dr. Vickers that she had requested on several occasions that she be given copies of the charges or allegations against her, and, on each occasion, her request was refused.

On March 26, 1979, Dr. Vickers wrote Mrs. Cantrell that he was removing her from her position as a teacher in the school district. The reason given for such action, in Dr. Vickers' language was "that you have been guilty of neglect of duty in refusing to agree to implement an Individual Plan for Improvement. This letter constitutes notice of the charge against you, being delivered prior to your removal. Your removal from your teaching position is with pay, pending final outcome of a hearing before the Board of Trustees should you request it." Mrs. Cantrell was advised that she could obtain a hearing before the board, with the right to be represented by counsel, to present evidence and cross-examine witnesses presented against her.

Mrs. Cantrell met with Dr. Vickers on March 26, 1979, in relation to the plan for improvement, and thereafter directed a letter to him in which she stated:

(1) she had been placed on probation;

(2) she had not received notification of the charges against her, even though she had requested the same on numerous occasions; and

(3) she had not been afforded a hearing on the charges.

Mrs. Cantrell requested, but was not given, copies of the written charges against her, or the identity of those persons preferring the same. She was not afforded the opportunity of appearing before the board of trustees, when the charges against her were heard by the board. As a matter of fact, she was not furnished with copies of the written charges against her, until copies were obtained through the discovery process in the action sub judice.

The complaint was filed herein on April 9, 1979. At the hearing on a motion for a preliminary injunction, held on April 11, 1979, the injunction was granted, and Mrs. Cantrell reinstated to her teaching position.

Mrs. Cantrell has continued in her teaching position with the school district during the pendency of this action. Dr. Vickers wrote Mrs. Cantrell on March 4, 1980, that her contract had been renewed for the 1980–81 school year. Counsel for the school district interpreted the court's above-referenced injunctive order to require automatic extension of her contract and employment until such time as the final judgment may be rendered herein.

The plan of improvement was prepared by Dr. Vickers, after considering the complaints which had been made by a group of concerned parents to the board of trustees. Mrs. Cantrell was not given an opportunity to refute or answer the charges; she was not furnished with copies of the written complaints; nor the identity of those who preferred the charges against her.

The plan of improvement includes twelve specific areas of concern. Most, if not all, are ambiguous and incapable of placing Mrs. Cantrell on notice of the specific conduct which is proscribed.[2]

The plan gives the Superintendent almost unbridled authority to terminate the employment of Mrs. Cantrell should he determine that Mrs. Cantrell had violated any provision of the plan or the intent thereof. The plan provides:

The violation of any part of this individual plan for improvement or the intent thereof or behavior on the part of the teacher not expressly written into this document which is deemed to be unprofessional or not in the best interest of an individual child shall lead to immediate termination by the Superintendent.

2. The specific areas of concern included in the plan, are:

A. Excessive pressure applied to some students by the teacher to complete academic assignments and to attain excessive academic standards.

B. Existence of a classroom atmosphere which, for some students, is not conducive to a good learning environment.

C. Classroom and/or homework assignments which are sometimes excessive and not clearly explained to students.

D. Verbal abuse of the students by the teacher in order to stimulate academic performance.

E. Lack of cooperation with some parents in solving normal problems encountered by students.

F. Phone calls to parents which have alienated them with further contact and cooperation with the teacher and the school.

G. Failure to follow through with agreements made with individual parents in parent-teacher conferences.

H. Humiliation of students before their peers when academic performance has been unsatisfactory or discipline has been breached.

I. Alleged retaliation against students whose parents have protested teaching practices used by the teacher to school officials.

J. SRA or related supplemental reading programs are over-emphasized.

K. Special subject classes are withheld from students who have not completed assigned academic work.

L. The use of threats or implied threats to promote the achievement of academic standards.

■ The court holds that the plan of improvement infringes upon the right of expression guaranteed Mrs. Cantrell by the First Amendment to the Constitution of the United States. Mrs. Cantrell's refusal to sign and implement the plan under penalty of immediate termination by the Superintendent is justified. She should not be required to surrender her First Amendment rights on pain of removal from her employment by the school district. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ The removal of Mrs. Cantrell from her position under the circumstances shown to exist by the evidence, without prior notice and hearing, violated the due process provision of the Fourteenth Amendment to the Constitution of the United States. The Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law". Mrs. Cantrell clearly had a property interest in her employment by the school district. She had been employed by the school district as a classroom teacher for nine consecutive years and, at the time, was in her tenth year of employment. School Employment Procedures Law of 1977, §§ 37–9–101 to 37–9–113, 1979, Cum.Supp., Miss.Code 1972, Ann.; *McDonald v. Mims*, 577 F.2d 951 (5th Cir. 1978).

Mrs. Cantrell also contends that the Due Process Clause of the Fourteenth Amendment protects her "liberty" interest, and she was entitled to a pretermination hearing before an impartial tribunal with the opportunity to defend her good name, reputation, and professional attainments. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Mrs. Cantrell's right to due process by the defendant school district is so well documented on account of the property rights which she possessed that a determination of this "liberty" issue is not necessary.

The defendants argue that Mrs. Cantrell was afforded the right to a posttermination hearing; and since she did not request a hearing, but instead filed the action sub judice, she must be held to have waived that right.

■ Provision is made for the suspension or removal of a teacher in Mississippi public schools by Miss.Code 1972 (Ann.), § 37–9–59 (1979 Cum.Supp.). Dr. Vickers' letter of March 26, 1979, to Mrs. Cantrell, advised her of the right to a public hearing, as the statute contemplates. To accept such an argument, however, would be to accept form over substance. This the court refuses to do. The evidence shows without contradiction that the board of trustees decided Mrs. Cantrell's future as a school teacher in the school district before she was advised that she might have a hearing. The board argues that if there should be a question as to the impartial and unbiased tribunal for the hearing of the charges against Mrs. Cantrell, the statute (Sec. 37–9–59), provides for a trial or hearing before a hearing officer pursuant to the procedure outlined in Section 37–9–111. The latter section provides in subparagraph (4) thereof that in such an event "[t]he board shall review . . . the record of the proceedings and, based solely thereon, conclude whether the [removal] determination is a proper . . decision." The ultimate judgment or determination, in any event, is that of the board. Since the decision had already been made by the individual members of the board in their directive of March 20, 1979 to Dr. Vickers, when the removal was made, Mrs. Cantrell could not have been afforded an impartial forum in which to present her case.

The court has concluded that the action by defendants in removing Mrs. Cantrell from her teaching position in the school district without affording her a hearing by an impartial tribunal denied her the due process guarantee of the Fourteenth Amendment.

### IV. *The Relief to be Granted.*

Mrs. Cantrell presently has a contract of employment with the school district for the school year 1980–81.

The defendants shall be permanently enjoined to recognize and give full faith and credit to that contract.

■ Defendants will be restrained from taking action of any nature against Mrs. Cantrell as an employee of the school district which in any way has its genesis in the facts, events or circumstances which led to her removal in the first place. Defendants will be enjoined to afford Mrs. Cantrell each and every right, benefit and privilege provided for or made available to other classroom teachers in the districts.

Mrs. Cantrell is the prevailing party and will be awarded her costs of action, including as a part thereof, a reasonable attorney's fee as provided by 42 U.S.C. § 1988.

■ Mrs. Cantrell seeks an award of compensatory and punitive damages. She has suffered some embarrassment and humiliations as a result of the action of defendants, but has not suffered any pecuniary loss, other than the expenses incurred in this litigation.

The evidence does not justify a holding that defendants acted with malice or ill will toward plaintiff. They were, at all times, counseled as to their actions by their attorney. The court must presume that they acted in accordance with this advice, and under the impression that their acts were legal under the statutes of the State of Mississippi and in compliance with constitutional provisions of the Constitutions of the State of Mississippi and the United States.

The court has concluded that Mrs. Cantrell is not entitled to recover punitive damages, nor compensatory damages, except for a nominal amount to cover an award to compensate her for her efforts in prosecuting this case and such personal expenses as she may have incurred in that connection. This amount is fixed at $2,500.00 and will be adjudged against only the school district. The award of compensatory damages is nominal. The court has considered, however, the relationship which the parties now enjoy, and concludes that the award is sufficient under the circumstances which existed at the time the controversy arose and those that now exist.

An appropriate final judgment and injunctive order will be issued forthwith.