Wallace B. SHAW, Plaintiff,

v.

Harold GWATNEY and John O. Marsh, Jr., Defendants.

No. LR–C–82–416.

United States District Court, E.D. Arkansas, E.D.

Jan. 16, 1985.

James L. Sloan, Little Rock, Ark., for plaintiff.

A. Doug Chavis, Asst. U.S. Atty., Curtis L. Nebben, Asst. Atty. Gen., Kathryn McGovern, Asst. U.S. Atty., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

EISELE, Chief Judge.

### I. INTRODUCTION

The plaintiff, Col. Wallace B. Shaw, is a commissioned officer in the Arkansas Army National Guard. Since his appointment to the National Guard in 1957, he has held a variety of assignments. Col. Shaw had never served on extended active duty in the United States Army, however, until 1980 when, pursuant to 32 U.S.C. § 708(a),[1] Governor Bill Clinton nominated him to serve as USPFO [2] for Arkansas. On May 4, 1980, Lt. General LaVern E. Weber, Chief of the National Guard Bureau

---

**1.** Section 708(a) states in pertinent part: "the governor of each state ... shall appoint, designate or detail, subject to the approval of the Secretary of the Army ... a qualified commissioned officer of the National Guard ... to be the property and fiscal officer of that jurisdiction."

**2.** A USPFO is an active-duty Army officer charged with accounting for and overseeing the use of federal property and funds provided by the federal government for use by state National Guard units. The applicable regulations set forth the numerous duties to be carried out by the USPFO. *See* NGR 130–6/ANGR 1102 § 3–1, 3–2 (1981).

(CNGB) of the Department of the Army, approved the nomination of the plaintiff in accordance with section 708 and certain military regulations. The plaintiff was then ordered to active duty to commence serving as USPFO under the supervision of CNGB Lt. General Weber. Col. Shaw's tenure as USPFO became imperiled, and then ultimately terminated, over a three-month span in the spring of 1982. It is the manner in which Col. Shaw's termination was carried out that forms the basis of this suit. Col. Shaw contends that applicable regulations and the due process clause of the United States Constitution entitle him to pre-termination proceedings. Defendants disagree, believing that Col. Shaw is not entitled to any pre-termination proceedings.

On June 8, 1982, before his termination, Col. Shaw filed a complaint in this Court seeking an injunction to prohibit defendants from removing him without any procedural protection. No motion for a temporary restraining order was made at that time because Col. Shaw understood from defendants that he would not be terminated until this lawsuit had been resolved. Apparently, Col. Shaw's understanding was incorrect, for on June 11, Col. Shaw was terminated. That day, Col. Shaw filed a motion for a temporary restraining order. A hearing was held on the motion for a restraining order on June 15, 1982. At the hearing, this Court found that "if the plaintiff prevails, the Court has the power to reinstate and to set aside the defendants' actions if they are not in accordance with the law." Tr. p. 28. On that basis, the Court denied the motion for a restraining order.

Defendants then filed motions to dismiss or, in the alternative, for summary judgment. After extensive briefing, in a lengthy opinion entered on March 30, 1984, this Court denied defendants' motions. 584 F.Supp. 1357. The Court first found this case one of the exceptional cases where federal review of a military decision was appropriate. The Court then went on to the merits and found that Col. Shaw was entitled to certain pre-termination procedural guarantees. Thus, it was determined that Col. Shaw, not the defendants, was entitled to summary judgment. The Court ordered that the parties attempt to come up with a mutually agreeable remedy. If an agreement was not reached, defendants were directed to show cause why the plaintiff should not be reinstated to his former position.

Defendants then filed another motion to dismiss, raising for the first time the question of this Court's jurisdiction. Plaintiff responded to this motion, and also filed a motion for partial summary judgment.[3] Both motions are now before the Court and will be treated in turn.

## II. JURISDICTION

■ In their present motion to dismiss, defendants argue that this action is primarily a claim for back pay exceeding $10,000, and therefore within the exclusive jurisdiction of the Court of Claims. The Court of Claims has exclusive jurisdiction over all claims for back pay in excess of $10,000. 28 U.S.C. § 1491; *Graham v. Henegar*, 640 F.2d 732 (5th Cir.1981). The Court of Claims and the district courts have concurrent jurisdiction over monetary claims equal to, or less than, $10,000. 28 U.S.C. § 1346(a)(2). The district courts have exclusive jurisdiction over actions where only injunctive or declaratory relief, but no damages, are sought. *Berdick v. United States*, 612 F.2d 533, 222 Ct.Cl. 94 (1979).

---

**3.** In his first and second amended complaint, plaintiff sought immediate reinstatement. In his motion for partial summary judgment, however, plaintiff asks for a hearing on the charges against him, and reinstatement if at that hearing it is found that no cause existed for termination. The Court believes that the plaintiff's request for a hearing is caused by plaintiff's belief that the Court is unwilling to order reinstatement. Although the Court is aware that it initially declined to reinstate plaintiff, the Court has examined the issue closely and now finds reinstatement an appropriate remedy. Accordingly, plaintiff's motion will, consistent with plaintiff's prior submissions, be treated as a motion for summary judgment seeking immediate reinstatement.

At issue in the instant case is the relevant time period which should be used to determine the amount of the claim. At the institution of this action, this Court clearly had jurisdiction. Indeed, at that time, no back pay was sought, so that the Court had exclusive jurisdiction. *Id.* A few days after institution of the action, plaintiff was terminated and a back pay claim arose. Over time, the claim has grown and is now approximately $50,000. Defendants contend that this Court lost jurisdiction at the moment the claim grew to exceed $10,000.

The Court has found no case exactly on point, and only a few that even touch upon the issue. In the first, *Giordano v. Roudebush*, a doctor was discharged from his position at a veterans' hospital. 617 F.2d 511 (8th Cir.1980). He filed suit in federal court, alleging denial of due process. At the time he filed suit, his back pay claim amounted to only $6,000. By the time the district court entered judgment in favor of the plaintiff, the back pay claim was over $70,000. Plaintiff was awarded that $70,000 and reinstatement. After judgment, defendant filed a motion to vacate, asserting that the court had no jurisdiction to award back pay in excess of $10,000. The district court agreed, and ordered that the damage claim be transferred to the Court of Claims. The plaintiff "acquiesced" in that transfer. *Id.* at 515. The district court maintained jurisdiction over the equitable claim, and again ordered reinstatement. Defendant appealed the order of reinstatement, arguing that the district court had lost jurisdiction of the entire subject matter and that the entire case should have been transferred to the Court of claims. On appeal, the Eighth Circuit rejected that argument and affirmed the district court. The Eighth Circuit determined that plaintiff's claims were primarily non-monetary, so the district court could retain jurisdiction over the equitable claim for reinstatement.

The plaintiff in *Giordano* had not appealed the correctness of the district court's transfer of the monetary claim. Thus, the Eighth Circuit never expressly addressed the issue of whether, given that jurisdiction was proper at the time the suit was filed, the district court could have maintained jurisdiction over the monetary claim. It could be argued that the fact that the Eighth Circuit nowhere questioned the transfer of the monetary claim, but instead assumed it correct, is implicit affirmation of the correctness of the transfer. But because the Eighth Circuit was not presented with the question and the relevant arguments, this Court does not believe that the issue was resolved by the Eighth Circuit Court.

In another case, *Keller v. Merit Systems Protection Board*, the Eleventh Circuit expressly addressed the issue of when a district court's jurisdiction over monetary claims is established, but did so only in dicta. 679 F.2d 220 (1982). In *Keller*, the circuit court affirmed the district court's finding that it did not have jurisdiction over a back pay and reinstatement action brought by a government employee. In deciding whether the district court had jurisdiction, the Eleventh Circuit looked at the amount of the claim at the time the suit was filed. The court stated:

> Because appellee's back pay claim exceeded $10,000 at the time he initiated this action, *see note 4 supra*, the district court was without jurisdiction to adjudicate that claim.

*Id.* at 222. Footnote 4, expanding on this point, states:

> When appellee filed this action in 1975, three years had passed from the date of his termination. Although appellee's pro se complaint did not specifically state the amount of the back pay sought, simple division indicates that an award based on three years of back pay would have exceeded $10,000. *Hence, as of the date of the initial complaint, which is the relevant document for determining subject matter jurisdiction,* appellee's back pay claim against the Commission exceeded $10,000.

*Id.* (emphasis added) (citations omitted).

The final relevant case, *Goble v. Marsh*, is a recent case from the Court of Appeals

for the District of Columbia. 684 F.2d 12 (1982). In *Goble*, Army Reserve officers contended that they were improperly released from active duty. At the time the suit was filed, the back pay claims exceeded $19,000. To come within the district court's jurisdiction, the officers waived all sums in excess of $10,000 which had accrued at the time the suit was filed. The officers expressly did not waive those sums in excess of $10,000 which would accrue after the suit was instituted. In other words, the officers did not waive those sums which would accrue between the date of filing and the date of judgment. The appellate court affirmed the trial court's decision that this waiver was insufficient to establish jurisdiction. The court stated:

In our view, appellants' position would circumvent congressional intent in limiting the Tucker Act jurisdiction of the District Courts to claims not exceeding $10,000. When an individual's back pay claim already exceeds $10,000 and a waiver is necessary to establish subject matter jurisdiction in the District Court, a partial waiver limited to pre-filing claims is not enough. By its very nature a back pay claim continues to accrue between filing of the complaint and entry of final judgment. Therefore, if a plaintiff waives only pre-filing claims in excess of $10,000, it is certain that if he prevails additional accruals in the intervening period will result in an aggregate claim of more than $10,000. In this situation the partial waiver does not reduce the back pay claim to a 'civil action or claim against the United States, not exceeding $10,000 in amount.' 28 U.S.C. § 1346(a)(2) (1976).

*Id.* at 15, 16 (footnotes omitted).

Defendants believe that this case stands for the proposition that a district court loses jurisdiction over a back pay claim once that claim reaches $10,000. The language of the opinion, however, indicates otherwise. The court stated:

We need not reach the question whether the district court may under any circumstances award a monetary judgment in excess of $10,000; our holding is limited

to the waiver situation presented in these cases.

*Id.* at 15, n. 4.

 This Court believes that none of the above described cases speak to the peculiar situation presented by the instant action. In this action, the court had jurisdiction at the time the case was instituted. The general rule is that jurisdiction is determined by reference to the time of the institution of the action. J. Moore, Moore's Federal Practice ¶ 0.91[3] (2d ed. 1982). This rule serves to prevent constant litigation concerning whether jurisdiction is present. The rule also works to minimize manipulation by parties intended to destroy jurisdiction after an action has commenced. Finally, this rule conserves resources in that a case is not started in one court and then moved to another.

Were this Court to hold that jurisdiction, once proper, is destroyed when a back pay claim exceeds $10,000, it would encourage the above described manipulation, and possible delaying tactics, and would likely result in repetitious litigation. More important, were this Court to hold that it has lost jurisdiction, the plaintiff would be forced to litigate in two forums. It is with respect to this issue that this case most obviously differs from the *Giordano* and *Goble* cases, *supra.*

 The Court of Claims can grant injunctive relief when such a claim is presented in conjunction with a back pay claim. So in *Giordano* and *Goble*, the plaintiffs could have chosen to have their entire action resolved in only one forum. Where plaintiffs could have chosen to have their entire action resolved by the Court of Claims, they cannot complain of having to litigate in two forums. In the instant case, by contrast, the plaintiff's sole option initially was the district court, for Col. Shaw's only claim was one for injunctive relief. Further, because Col. Shaw then had no back pay claim, no interpretation exists which would support a finding that his "claim" for back pay exceeded $10,000 at the time of filing. *Compare Goble, supra.*

Thus, in the situation presented here, one where no back pay claim existed at the time the action was commenced, this Court holds that it has not lost jurisdiction over any part of the action.[4] Defendant's motion to dismiss will therefore be denied.

## III. CAREY v. PIPHUS

In its previous order of March 30, 1984, this Court determined that plaintiff had a right to a pre-termination process. Immediately above, this Court has determined that it has jurisdiction. The remaining issue is that of relief. The specific question is whether, before providing equitable relief, the Court must decide whether plaintiff would have prevailed had he been accorded the process due him. The answer to this question depends on how broadly the Supreme Court's decision in *Carey v. Piphus* should be interpreted. 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

In *Carey*, two students were suspended from school without procedural due process. Suits were filed seeking declaratory and injunctive relief, as well as compensatory and punitive damages. One of the students was readmitted to school under a temporary restraining order eight days after the start of his 20-day suspension. The other student was readmitted after 17 days of his suspension pending the outcome of preliminary injunction proceedings. After trial on a stipulated record, the district court held that the students were entitled to declaratory relief and to deletion of the suspensions from their school records. The court failed to enter an order to that effect, however, and instead just dismissed the complaint. No damages were awarded by the district court because no proof of injury was presented. On appeal, the Seventh Circuit Court of Appeals held that an order granting declaratory and injunctive relief should have been entered. The circuit court also held that respondents would be entitled to recover damages to compensate them for missed school only if no just

cause for the suspensions existed. Even if no just cause existed, though, the students were entitled to "substantial non-punitive damages" simply as compensation for the denial of due process.

The Supreme Court granted certiorari to consider, in the Supreme Court's words, "whether in an action under § 1983 for the deprivation of procedural due process, a plaintiff most prove that he actually was injured by the deprivation before he may recover substantial 'non-punitive' damages...." *Id.* at 253, 98 S.Ct. at 1046–1047. The Supreme Court then decided in the affirmative, stating that:

> In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

*Id.* at 264, 98 S.Ct. at 1052.

Clearly, had the plaintiff, Col. Shaw, sought damages in the instant case, *Carey* would require this Court (or a jury if either party so requested) to determine what the result would have been had Col. Shaw been given the process due him. Only if this Court determined that Col. Shaw would not have been fired, either because the charges against him were false or exaggerated, or because of the presence of mitigating factors, would Col. Shaw be entitled to recover his damages; such damages could include compensation for his mental and emotional distress, any physical harm suffered, back pay and moneys expended while seeking alternative employment.

The narrow interpretation of *Carey* would limit it just to that situation, i.e., only where damages are sought would a court be forced to resolve the substantive dispute. Under this interpretation, where a person seeks only equitable relief, as Col. Shaw has done in the instant situation, a

---

**4.** The Court notes that, had it determined that the Court of Claims had jurisdiction over plaintiff's monetary claims, it would have retained jurisdiction over the equitable claim under the analysis described in *Giordano, supra.*

court could grant relief without an examination of the merits.

The broad interpretation would extend *Carey* to all due process actions. Under this interpretation, before a court could award equitable relief, be it an injunction, a declaration, or reinstatement, the court would have to decide the underlying substantive claim.

■ The majority of courts have apparently chosen the broad interpretation. *New York Urban Coalition v. United States Department of Labor*, 731 F.2d 1024 (2nd Cir.1984); *City of Ann Arbor v. United States Department of Labor*, 733 F.2d 429 (6th Cir.1984); *Pollock v. Baxter Manor Nursing Home*, 706 F.2d 236 (8th Cir.1983) (dissenting opinion, reversed on rehearing on other grounds) [5] *Hawkins v. Board of Public Education in Wilming-* *ton*, 468 F.Supp. 201 (D.Del.1979); *But see Kendall v. Board of Education of Memphis City Schools*, 627 F.2d 1 (6th Cir. 1980). These courts, however, do not appear to have explicitly addressed whether, given the distinction between equitable and legal relief, such a broad interpretation is either necessary or proper. In light of the important interests at stake, this lack of careful and explicit analysis is unfortunate.

The United States Constitution requires that a person be afforded due process before being deprived of life, liberty or property. In order that this important right be vindicated, courts must be able to afford appropriate relief. Traditionally that relief has been equitable relief, as distinct from the legal relief of damages.

Although the distinction between equitable and legal relief stems from an archaic

---

5. In *Pollack*, the plaintiff had instituted an action against a nursing home alleging that the home deprived her of procedural due process by discharging her from employment under stigmatizing conditions without according her prior notice and a hearing. The district court found that the reason for termination was true, and thus no liberty interest arose. 536 F.Supp. 673 (W.D.Ark.1982). The district court also found that "equitable back pay is not an appropriate remedy where, as here, the alleged disclosure does not occur until over a year after the termination." *Id.* at 680.

The plaintiff appealed the adverse judgment. On appeal, plaintiff conceded that the district court's finding that the allegations were true was not error. The issue then was, is there a liberty interest if the information is true. When the appeal was first heard, a majority of the Eighth Circuit panel affirmed the district court, and held that a liberty interest does not arise unless an employer disseminates *false* and defamatory statements. Judge McMillian dissented, stating that:

I believe that the district court and the majority have misread the holding of *Codd* [*v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) ]. I read *Codd* as holding that a publicly stigmatized employee who has been dismissed need only allege falsity or deny the substantial truth of the historical facts underlying the stigmatizing information in order to establish a right to a hearing.

To understand the *Codd* decision, one must first understand that there is a marked difference between proving a deprivation of a liberty interest and proving consequential damages caused by that deprivation. In *Carey v.*

*Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–57, 55 L.Ed.2d 252 (1978), the Supreme Court held that damages for deprivations of constitutional rights cannot be inferred. All damages, except nominal damages, must be proved separately from the fact that the deprivation has occurred. But, by the same token, *Carey* also stands for the proposition that a plaintiff may recover nominal damages for the constitutional deprivation in and of itself. In the *context of a public employee discharge case, Carey requires a discharged public employee who is seeking reinstatement or backpay to prove that she would not have been discharged if she had been given a due process hearing.*

706 F.2d at 238 (emphasis added).

In a later rehearing by the same panel, the previous decision was reversed, and nominal damages and attorney fees awarded. 716 F.2d 545 (8th Cir.1983). Judge McMillian was now, along with Judge Ross, in the majority while Judge Henley dissented. The majority opinion reversing the district court did not contain the above emphasized language.

It is this Court's belief that where the underlying substantive claim has been resolved, courts may consider that resolution in determining what relief is appropriate. *See* n. 4, *infra.* In *Pollock*, not only had the district court found the charges to be true, the plaintiff conceded that they were true. Thus, the facts before Judge McMillian were markedly different than those presented here. Accordingly, this court believes that Judge McMillian's above-emphasized analysis was not focused on the problem as it is presented by the instant action, and thus, Judge McMillian's analysis is not here dispositive.

and formalistic court system long since abolished, the distinction nonetheless has continued validity. With respect to due process actions, equitable relief is intended not to make a person whole but to restore the situation to what it was before the act. In other words, equitable relief is directly intended to invalidate the illegal government action and restore the status quo ante. *United States v. Cotton Plant School District No. 1,* 479 F.2d 671 (8th Cir.1973); *Wagner v. Little Rock School District,* 373 F.Supp. 876 (E.D.Ark.1973); *See generally* Dobbs on *Remedies,* § 3.1 (1973). Historically, the right to an equitable remedy for due process violations has been unquestioned. Indeed, and this is very important to note, in *Carey v. Piphus,* the Supreme Court never doubted the propriety of the earlier reinstatement of the students by the court. *Supra. See also Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Brown v. Bathke,* 566 F.2d 588 (8th Cir.1977); *Kennedy v. Sanchez,* 349 F.Supp. 863 (reversed on other grounds); *Owen v. City of Independence, Missouri,* 560 F.2d 925 (8th Cir.1977) (vacated on other grounds); *United States v. Cotton Plant School District No. 1, supra; Wagner v. Little Rock School District, supra. But see Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In the above cited cases, the plaintiff was not asked to prove that he or she should prevail on the underlying substantive claim. The court had before it a due process violation, and the court remedied that violation. (E.g., in *Piphus,* the Court forthwith reinstated the students.) The substantive dispute was collateral to the constitutional violation, and unnecessary to resolve.[6]

. Not only was it unnecessary for the court to resolve the merits, it was inappropriate. Courts in such cases should be interpreters of the Constitution, and not arbiters of every employment decision. If the adjudication of every due process claim required a court to examine and decide the merits of the underlying claim of entitlement, court intrusion into substantive employment and administrative decisions would greatly expand. Courts do not have the time, the expertise or the authority to take on comprehensive roles as employment decision makers. The focus in the first instance must therefore be upon the precise relief being sought.

■ In cases *where damages are sought,* the analysis is different. Damages are intended to compensate, to make a person whole. In order to grant the requested relief, i.e., to determine how much a person should be compensated, it is necessary to compare the person's situation, as it is, with what it would have been had he been afforded the process due. The need to determine what would have been necessitates inquiry into substantive areas collateral to the liability issue. That a person seeking monetary compensatory damages show the extent of his or her injury has always been a prerequisite to recovery. Dobbs, *supra,* § 3.3.

Before *Carey,* some courts believed that the right to due process was so special and important that the standard rule should be relaxed. Damages, instead of being proved, were presumed. *Carey* rejected that notion and applied the normal rules of damage recovery in due process actions. Some courts have now gone to the other extreme. These courts appear to find due process a right of such limited significance that it cannot be remedied absent a showing that substantive rights were also violat-

---

**6.** In some cases, such as first amendment or discrimination cases, the court must resolve the substantive issues. In other cases, the merits have been resolved by other tribunals. Under these circumstances, courts appropriately consider the resolution of the merits when determining the relief due for any procedural due process violations. *County of Monroe, Florida v.*

*United States Department of Labor,* 690 F.2d 1359 (11th Cir.1982); *City of Chicago v. United States Department of Labor,* 737 F.2d 1466 (7th Cir.1984); *Wilson v. Taylor,* 658 F.2d 1021 (5th Cir.1981); *Flowers v. Area Agency on Aging of Southeast Arkansas, Inc.,* 574 F.Supp. 71 (E.D. Ark.1983).

ed and that actual damage was suffered. *Carey* itself, however, nowhere states that the usual standards for awarding *equitable relief* are inappropriate. Surely had the Supreme Court intended to overturn the large body of settled law providing for such equitable relief, it would have done so explicitly rather than sub silentio.

Thus, this Court believes *Carey* should be interpreted to mean exactly what it says:

> although mental and emotional distress ... is compensable ... neither the likelihood of such injury nor the difficulty of proving it is so great as to justify *awarding compensatory damages* without proof that such injury actually was caused.

(emphasis added). *Supra*, 435 U.S., at 264, 98 S.Ct. at 1052.

■ This Court joins those courts which have not read *Carey* to require in all cases that, before equitable relief can be awarded, a determination must be made of what would have happened had the process due been afforded. *Wilson v. Robinson*, 668 F.2d 380 (8th Cir.1981); *Dillon v. Pulaski County Special School District*, 594 F.2d 699 (8th Cir.1979); *Jones v. Board of Governors of University of North Carolina*, 557 F.Supp. 263, 265 (W.D.N.C.1983).

## IV. BACK PAY AS EQUITABLE RELIEF

■ Once it is determined that this Court may grant equitable relief, the question of what constitutes equitable relief must be addressed. Specifically, can back pay be considered an equitable remedy for an unlawful termination? Certainly the fact that back pay is a monetary award is not sufficient reason to label it legal rather than equitable. *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974); Dobbs, *supra*, § 3.3. In fact where back pay was awarded in conjunction with reinstatement, traditionally, both forms of relief were considered

equitable. In some areas of law, this principle still holds true. For example, in Title VII actions, the only relief courts may grant is equitable relief. 42 U.S.C. 2000e–5(g). And in Title VII actions, back pay is routinely awarded as equitable relief, while compensatory damages are never awarded. As reported by the Eighth Circuit in *Harmon v. May Broadcasting Company:*

> An award of back pay under Title VIII for discriminatory employment practices is an integral part of the equitable remedy of reinstatement and is not comparable to damages in a common-law action for breach of employment contract.

583 F.2d 410, 411 (1978).

In other circumstances, though, back pay may be a legal remedy. For example, in the case of *Setser v. Novack Investment Company*, a white male filed a section 1981 action seeking money damages for back pay, lost insurance benefits, expenses incurred in seeking alternative employment, inconvenience, humiliation and embarassment, pain and suffering, punitive damages, interest, attorney fees and costs. 638 F.2d 1137 (8th Cir.1981). The plaintiff did not seek reinstatement. The district court denied plaintiff's request for a jury trial, and the Eighth Circuit reversed. In reversing, the Eighth Circuit determined that the back pay claim was a legal, not equitable, claim.

Back pay can be, and often is, claimed as an element of damages.[7] *Bishop v. Tice*, 622 F.2d 349 (8th Cir.1980). Much of the language in *Setser* indicates that it stands only for the uncontroversial proposition that back pay cannot automatically be labeled an equitable remedy. ("The question of the proper characterization of back pay arises here in the unusual context of a plaintiff who is not also seeking the equitable remedy of reinstatement," *supra* at 1140.) Other language though is general, indicating that back pay should never be characterized as equitable. ("We conclude that back pay or lost wage determinations

---

7. Because in many situations it makes no practical difference whether an award of back pay is legal or equitable, courts are often lax in distinguishing between the two. *Walker v. Ford Motor Company*, 684 F.2d 1355 (11th Cir.1982) n. 16.

are inherently in the nature of legal damages." *Id.* at 1142.) See also *Johnson v. Wolff's Clothiers, Inc.,* 663 F.2d 800 (8th Cir.1981). Although the Supreme Court denied a writ of certiorari in *Setser,* a reading of the opinions which accompanied the denial of certiorari gives an indication of the proper reading of *Setser.* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981). In their opinions, both the majority denying certiorari and the minority opposing the denial, read *Setser* as limited to those situations where back pay, but not reinstatement, is sought. *Id.* Other courts have similarly read *Setser. Powell v. Pennsylvania Housing Finance Agency,* 563 F.Supp. 419 (M.D.Pa.1983); *Davis v. Supermarkets General Corporation, Pathmark Division,* 584 F.Supp. 870 (E.D.Pa. 1984); *Mitchell v. Alex Foods, Inc.,* 572 F.Supp. 825 (N.D.Ga.1983); *Daniels v. Lord & Taylor,* 542 F.Supp. 68 (N.D.Ill. 1982). *But see Thomas v. Resort Health Related Facility,* 539 F.Supp. 630 (E.D.N.Y.1982). No Eighth Circuit Court case has interpreted *Setser* in light of the Supreme Court opinions. This Court will follow the interpretation of *Setser* given by the Supreme Court.

■ Under the facts presented by the instant case, this Court believes that, as in Title VII cases, the requested relief of reinstatement with back pay should be considered equitable. *Brown v. Bathke, supra; Gerrin v. Hickey,* 464 F.Supp. 276 (E.D.Ark.1979); *Mitchell v. Alex Foods, Inc., supra; Harkless v. Sweeny Independent School District,* 427 F.2d 319 (5th Cir.1970); *Owens v. City of Independence, Missouri, supra. But see County of Monroe, Florida, supra; Wilson v. Taylor, supra; City of Boston v. Secretary of Labor,* 631 F.2d 156 (1st Cir.1980); *Kendall v. Board of Education of Memphis City Schools,* 627 F.2d 1 (6th Cir.1980). *Compare Wellner v. Minnesota State Junior College Board,* 487 F.2d 153 (8th Cir.1973). In this case, the plaintiff, Col. Shaw, initially asked only for an injunction. The Court denied that request (in retrospect, perhaps unwisely so), finding that if it was later determined that plaintiff had a

due process right, this Court could reinstate him. Plaintiff now seeks only that reinstatement and back pay. No compensatory damages are claimed. At the time it was requested, this Court certainly had the power to grant the injunction. *Wilson v. Robinson, supra; Cantrell v. Vickers,* 495 F.Supp. 195 (W.D.Miss.1980); *Harris v. Arizona Board of Regents,* 528 F.Supp. 987 (Ariz.1981). If it had granted the injunction, plaintiff would have kept his job and remained on the payroll until such time as defendants chose to lawfully terminate him, i.e., in accordance with the process due. An award of reinstatement with back pay is substantially that same relief, only done retrospectively rather than prospectively.

It should be further noted that the plaintiff is not responsible for the fact that the only equitable relief now available is the retrospective relief consisting of reinstatement with back pay. Plaintiff here did not wait until long after his termination to bring suit in hopes of racking up a substantial back pay award. Plaintiff filed this action before he was even terminated. Defendants had at that time an opportunity to provide plaintiff with the process due him. Defendants chose not to do so, and may not now be heard to complain about the natural accrual of back pay.

In sum, the Court believes that the substantive decision of continued employment for the plaintiff must be left in the hands of those people with the authority and the expertise to make it. Upon reinstatement, the employer may decide to pursue the matter and, after being afforded due process, the employee might, or might not, be terminated. Or, for any number of reasons, the employer could decide not to pursue the matter. In any event, the decision will not be that of the Court. The Court's role will have been properly limited to determining the requirements of due process.

## V. CONCLUSION

It is therefore Ordered that plaintiff be reinstated to the position of United States

890

Property and Fiscal Officer for Arkansas, effective June 11, 1982, with back pay and all other rights and benefits pertinent to that position. It is further Ordered that defendant's motion to dismiss be, and it is hereby, denied. All issues having been resolved, it is finally ordered that this action be, and it is hereby, dismissed.