886 F.2d 1004
 50 Fair Empl.Prac.Cas. 1718,
51 Empl. Prac. Dec. P 39,332
John C. WATSON, Appellee,
v.
ARKANSAS NATIONAL GUARD, Maj. Gen. Jimmie "Red" Jones,
Garnett J. Leonard, Charles S. Rowland, Guy
Robinson, Ronald D. Fewell, In Their
Individual and Official
Capacities, Appellants.
 No. 86-1639.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 4, 1988.
Decided Sept. 22, 1989.
 
 Claudell Woods, N. Little Rock, Ark., for appellants.
 Steve Weaver, Little Rock, Ark., for appellee.
 Before FAGG and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 John C. Watson seeks, among other things, to have a federal court order his reinstatement to the Arkansas National Guard. He brought this action pursuant to 42 U.S.C. Secs. 1981 and 1983 and the Fourteenth Amendment against the Arkansas National Guard and five individuals, all military personnel, alleging that the defendants acted in a racially discriminatory manner in dismissing him from the Guard for reasons of physical disability.[1] His complaint requested damages and equitable relief, including reinstatement and back pay.
 
 
 2
 Defendants moved to dismiss or, in the alternative, for summary judgment on the grounds, inter alia, that they were entitled to both absolute immunity and qualified immunity as a matter of law. The District Court,[2] in a brief order, denied these motions. An interlocutory appeal was taken from that order, resulting in our directing the trial court to address the various grounds for dismissal or summary judgment raised by defendants in their motion and to give reasons for its rulings. We retained jurisdiction over the appeal.[3]
 
 
 3
 On remand, the District Court granted summary judgment in favor of defendants on Watson's claim for damages based upon the Feres[4] doctrine and dismissed without prejudice Watson's claims for equitable relief because of Watson's failure to exhaust his administrative remedies.[5] In a memorandum opinion, the court set forth a cogent and thorough analysis of the issue of whether the policies of judicial noninterference in military matters would preclude a claim for equitable relief and concluded that such claims must be carefully regulated. The matter is again before us, with defendants contending that all Watson's claims, those for damages and for injunctive relief alike, are nonjusticiable, and therefore that his claims for equitable relief should have been dismissed with prejudice.
 
 
 4
 We conclude that the District Court properly granted summary judgment against Watson on his claim for damages (Watson in fact has abandoned this claim), and properly dismissed without prejudice his equitable claim for correction of military records and back pay pending exhaustion of administrative remedies. We further conclude that Watson's claim for reinstatement is nonjusticiable, and therefore we remand this claim to the District Court for dismissal with prejudice.
 
 DISCUSSION
 
 5
 In Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), a unanimous Supreme Court held that military personnel may not bring a Bivens-type[6] action for damages against their superior officers for alleged constitutional violations. Id. 462 U.S. at 305, 103 S.Ct. at 2368. In Chappell, enlisted military personnel sued their superiors seeking damages, declaratory judgment, and injunctive relief for alleged racial discrimination in their assignments and evaluations. Guided by the doctrine established in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which held that the United States is not liable under the Federal Tort Claims Act for injuries to military personnel which "arise out of or are in the course of activity incident to service,"[7] the Court concluded that the unique disciplinary structure of the military coupled with Congress's well-established authority in the military field made it "inappropriate to provide enlisted military personnel a Bivens-type remedy against their superior officers." Chappell, 462 U.S. at 304, 103 S.Ct. at 2368. The Court stated:
 
 
 6
 "[J]udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."
 
 
 7
 Id. at 301, 103 S.Ct. at 2366 (quoting Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 539-40, 97 L.Ed. 842 (1953)). The Court further stated:
 
 
 8
 [T]he special relationships that define military life have "supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have."
 
 
 9
 Chappell, 462 U.S. at 305, 103 S.Ct. at 2368 (quoting Warren, The Bill of Rights and the Military, 37 N.Y.U. L.Rev. 181, 187 (1962)).
 
 
 10
 The Court, in recognition of Congress's authority over the military, stated: "The case arises in the context of Congress' authority over national defense and military affairs, and perhaps in no other area has the Court accorded Congress greater deference." Id. at 301, 103 S.Ct. at 2366 (quoting Rostker v. Goldberg, 453 U.S. 57, 64-65, 101 S.Ct. 2646, 2651, 69 L.Ed.2d 478 (1981)). "Congress has exercised its plenary constitutional authority over the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life," id. at 302, 103 S.Ct. at 2367, resulting in the establishment of a comprehensive system of military justice distinct from, but comparable to, the civilian courts. See Schweiker v. Chilicky, --- U.S. ----, 108 S.Ct. 2460, 2475, 101 L.Ed.2d 370 (1988) (Brennan, J., dissenting) (in the military setting Congress has "established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure," quoting Chappell, 462 U.S. at 302, 103 S.Ct. at 2367).
 
 
 11
 The Court in United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), recognizing the continuing validity of the Feres doctrine, concluded:
 
 
 12
 To permit this type of suit [negligence] would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to replace restraints on a soldier's off-base conduct.
 
 
 13
 Id. at 58, 105 S.Ct. at 3043.
 
 
 14
 In United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), the Court, in overturning a lower court's narrow construction of Chappell, reemphasized the breadth of the Feres doctrine and clarified Chappell.[8] In Stanley, a former serviceman brought a Bivens action and attempted to distinguish Chappell by arguing that the suit did not involve his superior officers, and therefore the chain-of-command concerns at the heart of Chappell were not implicated. The Court rejected this argument, concluding that the "incident to service" test established in Feres applies to all Bivens claims in the military setting. Id. at 680, 107 S.Ct. at 3061-62. To hold otherwise
 
 
 15
 ignore[s] our plain statement in Chappell that "[t]he 'special factors' that bear on the propriety of respondents' Bivens action also formed the basis of this Court's decision in Feres v. United States," 462 U.S. at 298, 103 S.Ct. at 2365, and that "[a]lthough this case concerns the limitations on the type of nonstatutory damages remedy recognized in Bivens, rather than Congress' intent in enacting the Federal Tort Claims Act, the Court's analysis in Feres guides our analysis in this case." Id. at 299, 103 S.Ct. at 2365.... Today, no more than when we wrote Chappell, do we see any reason why our judgment in the Bivens context should be any less protective of military concerns than it has been with respect to FTCA suits, where we adopted an "incident to service" rule.
 
 
 16
 Id. at 680-81, 107 S.Ct. at 3062.
 
 
 17
 The clear principle that emerges from these Supreme Court decisions is that "civilian courts may not sit in plenary review over intra-service military disputes. Following Chappell and Shearer [and Stanley ], there can be little doubt that the permissible range of lawsuits by present or former servicemen against their superior officers is at the very least, narrowly circumscribed." Crawford v. Texas Army National Guard, 794 F.2d 1034, 1035 (5th Cir.1986) (footnote omitted).
 
 
 18
 Chappell and Stanley involved Bivens actions, while Watson's claims rest upon Sec. 1983. The difference is due to the identity of the defendants. Although the National Guard has both state and federal characteristics, see Perpich v. United States Department of Defense, 880 F.2d 11 (8th Cir.1989) (en banc), action by the National Guard of a particular state is considered state action within the meaning of the Fourteenth Amendment, and therefore suits alleging constitutional violations by the Guard and its personnel are brought under Sec. 1983, rather than Bivens. Jorden v. National Guard Bureau, 799 F.2d 99, 104-06 (3rd Cir.1986), cert. denied, 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987).
 
 
 19
 This circuit, along with the majority of circuits that have considered the question, has extended the logic of Chappell to actions brought against National Guard officers under Sec. 1983. Brown v. United States, 739 F.2d 362, 367 (8th Cir.1984), cert. denied, 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985); Martelon v. Temple, 747 F.2d 1348, 1350-51 (10th Cir.1984), cert. denied, 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985); Jorden, 799 F.2d at 107-08; Crawford, 794 F.2d at 1036. We observed in Brown that there is no "reasoned distinction for purposes of the Feres doctrine between Bivens-type actions under the Constitution and actions brought under a federal civil rights statute." Brown, 739 F.2d at 367.[9] The concern for the disruption of military discipline upon which Feres, Chappell, and Stanley are based applies equally when a court is asked to entertain an intra-military suit under Sec. 1983.
 
 
 20
 Watson initially sought damages, back pay, correction of his military record, and injunctive relief in the form of reinstatement. Post-Stanley, Watson abandoned his claim for damages. Although the damages claim thus is not before us, we note our agreement with the circuits that have concluded that suits by guardsmen under Sec. 1983 claiming damages are precluded under Chappell. See Jorden, 799 F.2d at 107-08; Crawford, 794 F.2d at 1036.
 
 
 21
 To the extent that Watson seeks correction of his military record and reinstatement of eligibility for retirement benefits, we find his claims premature. Watson has failed to exhaust his administrative remedies by appealing to the Army Board for the Correction of Military Records (ABCMR). Exhaustion of administrative remedies before the ABCMR is required in this circuit. Horn v. Schlesinger, 514 F.2d 549, 553 (8th Cir.1975). We therefore affirm the District Court's dismissal without prejudice as to these claims.[10]
 
 
 22
 Watson further requests injunctive relief in the form of reinstatement.[11] In Chappell, the Supreme Court made no direct reference to claims for injunctive relief against the military.[12] However, the policies upon which the Feres doctrine, and subsequent case law in that doctrine's development, are premised weigh heavily in favor of precluding claims for equitable relief.
 
 
 23
 The Supreme Court has stated that "[t]he special nature of military life--the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel--would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command." Chappell, 462 U.S. at 304, 103 S.Ct. at 2367. This reasoning applies with equal force to the possibility of a judicially imposed injunctive remedy. "[C]enturies of experience have developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns." Id. at 300, 103 S.Ct. at 2366. The potential for disruption of this hierarchical structure exists each time a soldier hales his superior into court. See, e.g., Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 676, 97 S.Ct. 2054, 2060, 52 L.Ed.2d 665 (1977) (Marshall, J., dissenting). The threat to the "special nature of military life" is present regardless of the remedy the soldier seeks.
 
 
 24
 Here, the equitable relief sought by Watson would require a highly intrusive judicial inquiry into personnel decisions that bear upon the readiness of the military to perform its mission. Claims in civilian courts challenging personnel decisions of the military services have an undeniable potential for undermining military discipline and thus for impairing training programs and operational readiness. We are not the first to note the inappropriateness of judicial intrusion into matters affecting military discipline, training, or readiness. See, e.g., Gilligan v. Morgan, 413 U.S. 1, 7-8, 93 S.Ct. 2440, 2444, 37 L.Ed.2d 407 (1973) (controversy nonjusticiable because the relief sought required initial judicial review and continuing judicial surveillance over the training, weaponry, and orders of the National Guard); United States v. Shearer, 473 U.S. at 59, 105 S.Ct. at 3043 (plaintiff's claims characterized as "the type[s] of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness").
 
 
 25
 Further, judicial inquiry into claims such as Watson's would thrust the courts into an area of responsibility extensively controlled by and constitutionally entrusted to the legislative and executive branches. Congress, acting pursuant to its constitutional authority, has established a comprehensive system to regulate military life. Allowing military personnel to seek to overturn military decisions by means of suits for injunctive relief in the civilian courts "would plainly be inconsistent with Congress' authority in this field." Chappell, 462 U.S. at 304, 103 S.Ct. at 2367; see also Schweiker, 108 S.Ct. at 2467 (in an area where Congress has legislated comprehensively and provided remedial mechanisms for constitutional violations the Court will not create a Bivens remedy).
 
 
 26
 Based upon a searching consideration of the policies underlying Feres and Chappell, we are unable to conclude that military discipline will be any less affected by a suit for injunctive relief than by a claim for damages. The judiciary does not acquire competence in this area merely because the remedy sought is an injunction rather than damages. The military concerns found compelling in Feres and Chappell are equally present here. "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers...." Chappell, 462 U.S. at 300, 103 S.Ct. at 2366. To disallow claims for damages while agreeing to review claims for injunctive relief arising from the same facts would be to exalt form over substance. It follows that Watson's claim for reinstatement as a member of the Guard must be considered nonjusticiable, and we so conclude.
 
 
 27
 Our holding finds support in a decision of the Fifth Circuit. In Crawford v. Texas Army National Guard, 794 F.2d 1034, a panel of that court reached the same result as do we with regard to claims for equitable relief, persuasively commenting that an "injunctive-relief exception to Chappell ... could swallow Chappell's rule of deference. We therefore believe that suits for injunctive relief, like those for monetary damages, must be carefully regulated in order to prevent intrusion of the courts into the military structure." Id. at 1036-37. The court in Crawford found the plaintiff's claims for injunctive relief against the National Guard nonjusticiable without resort to the complex and unpredictable analysis prescribed in Mindes v. Seaman, 453 F.2d 197 (5th Cir.1971).[13] In light of the Supreme Court's decision in Stanley (applying the "incident to military service" test to Bivens damages claims),[14] we are satisfied that the approach adopted in Crawford is correct, and that Mindes is not a viable statement of the law. See Stinson v. Hornsby, 821 F.2d 1537, 1541-43 (11th Cir.1987) (Henderson, J., specially concurring) (Crawford is a better approach for determining the propriety of hearing military disputes than Mindes because the brighter line drawn by Crawford is fairer to future litigants and is more in keeping with recent Supreme Court decisions), cert. denied, --- U.S. ----, 109 S.Ct. 402, 102 L.Ed.2d 390 (1988). But see Jorden v. National Guard Bureau, 799 F.2d at 108-11 (although claims against the military for damages for constitutional violations are barred, claims for injunctive relief are not necessarily barred; Mindes analysis used to sustain claim for reinstatement).
 
 
 28
 We recognize that the Supreme Court "has never held ... that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." Chappell, 462 U.S. at 304, 103 S.Ct. at 2368. For example, the Court has entertained, on numerous occasions, suits involving facial constitutional challenges to military regulations or statutes.[15] See, e.g., Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (free exercise challenge to the application of an Air Force regulation restricting the wearing of headgear); Rostker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (Fifth Amendment challenge to all-male draft registration); Brown v. Glines, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (First Amendment challenge to regulations concerning the circulation of petitions on Air Force bases); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (vagueness and overbreadth challenges to criminal provisions of the military code); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (Fifth Amendment challenge to statutes claimed to discriminate against women in military benefits). "The nature of the lawsuits, rather than the relief sought, rendered them justiciable." Crawford, 794 F.2d at 1036.
 
 
 29
 Our holding in this case is not inconsistent with the cases referred to in the preceding paragraph. There is a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision. In the first instance, a legal analysis is required; one which courts are uniquely qualified to perform. The second involves a fact-specific inquiry into an area affecting military order and discipline and implicating all the concerns on which Feres and Chappell are premised.
 
 
 30
 Nor is our holding barred by contrary precedent in this Circuit. In Gant v. Binder, 766 F.2d 358 (8th Cir.1985), this Court affirmed, in a brief per curiam opinion, a final judgment on the merits in favor of the various defendants, including the Nebraska Army-Air National Guard. Although the Court there made a passing remark that the district court had jurisdiction over the plaintiff's disparate treatment claim under 42 U.S.C. Sec. 1981, because of the posture of the appeal we had no occasion to consider whether the district court was correct in ruling that Chappell did not bar the plaintiff's claim for injunctive relief, and we neither considered nor decided the question. Although Taylor v. Jones, 653 F.2d 1193 (8th Cir.1981), is an employment discrimination case in which we affirmed an award of injunctive relief against both the Adjutant General of the Arkansas National Guard and the United States, Taylor was decided almost two years before the Supreme Court handed down its decision in Chappell, and therefore is of limited assistance in determining the import of Chappell in the present case. In addition, the opinion in Taylor does not even mention the Feres doctrine, from which we can only conclude that Feres was not asserted by the defendants as a bar to the action.
 
 
 31
 Similarly, in Shaw v. Gwatney, 795 F.2d 1351 (8th Cir.1986), the plaintiff sought monetary damages and reinstatement in his federal civilian technician job as United States property and fiscal officer for the State of Arkansas. This Court held that Shaw's claim that he was dismissed from his job in violation of Army procedural guarantees was subject to judicial review. Id. at 1357. The Army, however, only challenged the district court's conclusion that the balancing of the Mindes factors weighed heavily in favor of judicial review. Id. Our Court was asked only to review the district court's weighing of the Mindes factors; we did not discuss the Feres or Chappell decisions, and the case was pre-Stanley. Shaw therefore is of little assistance here. The present case is the first case in which we have reached and decided the question whether there is an injunctive-relief exception to Chappell.
 
 
 32
 Although we hold that Watson's claim for reinstatement to the Guard is nonjusticiable, he is not left without any recourse. As previously noted, Watson may seek review from the Army Board for the Correction of Military Records. Established by Congress, the Board has the authority to correct error or injustice in a military record and to award back pay and other lost benefits, but does not have the power to compel reinstatement in a state Guard. The Board's decisions are subject to judicial review and may be set aside if they are arbitrary and capricious or are not supported by substantial evidence.[16] This remedy was found sufficient in Chappell, 462 U.S. at 302-03, 103 S.Ct. at 2367, as it is the remedy Congress has chosen to provide. See Holdiness v. Stroud, 808 F.2d 417, 426 (5th Cir.1987).
 
 CONCLUSION
 
 33
 We affirm the District Court's dismissal of Watson's claim for correction of military records and reinstatement of benefits without prejudice to Watson's right to seek administrative relief. As to Watson's claim for injunctive relief in the form of reinstatement, we hold that the claim is nonjusticiable, and we order the case remanded to the District Court for dismissal of this claim with prejudice.
 
 
 
 [1]
 Watson also was automatically dismissed from his civilian technician position with the Guard. One must be a Guard military member in order to be eligible for a technician position. 32 U.S.C. Sec. 709(b), (e)(1) (1982)
 
 
 [2]
 The Honorable George H. Howard, Jr., United States District Judge for the Eastern District of Arkansas
 
 
 [3]
 In the interim, the Supreme Court decided United States v. Johnson, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) and United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). The Court in Stanley held that no Bivens remedy, whereby a violation of constitutional rights can give rise to a damages action against an offending federal official even in the absence of a statute authorizing such relief, is available for injuries that arise out of or are in the course of activity incident to military service. Stanley, 483 U.S. at 676, 107 S.Ct. at 3059. In Johnson, the Court concluded that the Feres doctrine bars a Federal Tort Claims Act action on behalf of a service member killed during activity incident to service, even if the alleged negligence is by a civilian employee of the federal government. Johnson, 481 U.S. at 686-91, 107 S.Ct. at 2066-69. In light of these cases, Watson submitted a supplemental memorandum to the trial court in which he abandoned his claim for damages
 
 
 [4]
 Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950)
 
 
 [5]
 Watson has not availed himself of his right to appeal to the Army Board for the Correction of Military Records (ABCMR)
 
 
 [6]
 Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [7]
 Feres, 340 U.S. at 146, 71 S.Ct. at 159. The Supreme Court's decision in Feres was predicated upon three rationales: (1) the "distinctly federal" relationship between the United States and its service personnel; (2) the comprehensive military system of simple, certain, and uniform compensation for injuries; and (3) the fear of disrupting the military disciplinary structure. See Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 671-72, 97 S.Ct. 2054, 2057-58, 52 L.Ed.2d 665 (1977). As the Court has recognized, "[i]n the last analysis, Feres seems best explained by the "peculiar and special relationship of the soldier to his superiors [and] the effects of the maintenance of such suits on discipline." United States v. Muniz, 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963) (quoting United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954))
 
 
 [8]
 The Court noted that the circuit courts had not been uniform in their interpretation of the holding in Chappell. Stanley, 483 U.S. at 676, 107 S.Ct. at 3059
 
 
 [9]
 See Butz v. Economou, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909-10, 57 L.Ed.2d 895 (1978) (where the immunity from suit of government officials is concerned, Sec. 1983 and Bivens claims must be treated alike). See also Harlow v. Fitzgerald, 457 U.S. 800, 818 n. 30, 102 S.Ct. 2727, 2738 n. 30, 73 L.Ed.2d 396 (1982)
 
 
 [10]
 An action taken by the ABCMR is reviewable under the "arbitrary and capricious" standard. See Chappell, 462 U.S. at 303, 103 S.Ct. at 2367
 
 
 [11]
 We note that the ABCMR does not have the power to reinstate a dismissed member of a state national guard
 
 
 [12]
 Although deciding the Bivens-damages claims, the Court in Chappell remanded the case for review of whether the servicemen could maintain a suit seeking damages under 42 U.S.C. Sec. 1985(3) because the issue was not adequately addressed by the court of appeals or briefed before the Supreme Court. Chappell, 462 U.S. at 305 n. 3, 103 S.Ct. at 2368 n. 3
 
 
 [13]
 In Mindes, the court employed a multi-factor analysis to determine whether particular constitutional claims asserted by a member of the Armed Forces against his superior officers are barred from suit. The Mindes analysis requires a two-step process. First, an internal military decision should not be reviewed unless the plaintiff alleges the deprivation of a constitutional right or that the military has acted in violation of applicable statutes or regulations, and the plaintiff has exhausted available intra-service corrective measures. Mindes, 453 F.2d at 201. Second, the reviewability of the claim must be examined by weighing the following four factors:
 (1) The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values....
 (2) The potential injury to the plaintiff if review is refused.
 (3) The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted....
 (4) The extent to which the exercise of military expertise or discretion is involved.
 Id.
 
 
 [14]
 The Court in Stanley stated that the mere process of deciding
 which particular suits would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters. Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. Even putting aside the risk of erroneous judicial conclusions (which would becloud military decision-making), the mere process of arriving at correct conclusions would disrupt the military regime. The "incident to service" test, by contrast, provides a line that is relatively clear and that can be discerned with less intensive inquiry into military matters.
 Stanley, 483 U.S. at 682-83, 107 S.Ct. at 3063. Here, the alleged constitutionally violative conduct clearly was "incident to military service," and in fact Watson conceded this issue in the District Court. Watson v. Arkansas Nat'l Guard, No. LR-C-85-401, slip op. at 7 (E.D.Ark. Dec. 7, 1987).
 
 
 [15]
 Watson makes no constitutional attack on any statute or regulation. Rather, he challenges the constitutionality of a discrete personnel action taken pursuant to unassailably valid statutory authority
 
 
 [16]
 A claim that requires a district court merely to evaluate, in light of familiar principles of administrative law, the Board's decision not to take corrective action involves a determination only of whether the Board's decisionmaking process was deficient, not whether the decision was correct. See Kreis v. Secretary of the Air Force, 866 F.2d 1508 (D.C.Cir.1989)